IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Chantee Bond, | C/A No. 0:12-2764-RMG-PJG |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Chantee Bond ("Bond"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

In September 2009, Bond applied for DIB and SSI, alleging disability beginning September 29, 2009. Bond's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on February 24, 2011, at which Bond, who was represented by Eleanor Swierk, a non-attorney representative, appeared and

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.

Page 1 of 14



testified. The ALJ issued a decision on June 24, 2011 denying benefits and concluding that Bond was not disabled. (Tr. 11-22.)

Bond was born in 1979 and was thirty years old at the time of her alleged disability onset date. (Tr. 35.) She has a high school education and past relevant work experience as a teacher's aide, an usher, and a sales clerk. (Tr. 174, 179.) In her application, Bond alleged disability since September 29, 2009 due to epilepsy, diabetes, depression, "ovary," and focus impairment. (Tr. 173.)

The ALJ found as follows:

1.  The claimant will meet the insured status requirements of the Social Security Act through December 31, 2011.

2.  The claimant has not engaged in substantial gainful activity since September 29, 2009, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: affective disorder (20 CFR 404.1520(c) and 416.920(c)).

    \* \* \*

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    \* \* \*

5.  . . . [T]he claimant has the residual functional capacity to sit for 6 hours in an 8-hour day for 2 hours at a time, and stand/walk 2-4 hours in an 8-hour day for one hour at a time. She is limited to simple, routine, repetitive tasks in a stable environment with infrequent, gradual changes. She must avoid interaction with the general public or co-workers and work in limited proximity with co-workers (they can be in the same room but must work independently). She should avoid unprotected heights, climbing ladders, ropes and scaffolds and dangerous moving machinery.

    \* \* \*

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

    \* \* \*

PJG

7.     The claimant was born . . . [in] 1979, and was 30 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963)

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

                                                      \*    \*    \*

11.     The claimant has not been under a disability, as defined in the Social Security Act, from September 29, 2009 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-21.) Bond submitted additional evidence to the Appeals Council, which denied her request for review on August 7, 2012, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(I), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:



  (1)  whether the claimant is engaged in substantial gainful activity;

  (2)  whether the claimant has a "severe" impairment;

  (3)  whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

  (4)  whether the claimant can perform her past relevant work; and

  (5)  whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).



## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Bond raises the following issues for this judicial review:

I.  The ALJ failed to properly assess the treating and evaluating physician's opinions as required by 20 CFR § 404.1527(d)(1)-(6), SSR 96-2p and SSR 96-5p.

II. The ALJ failed to properly evaluate Bond's RFC and mental impairments and evaluate evidence both favorable as well as unfavorable to her claims.

(Pl.'s Br., ECF No. 23.)

# DISCUSSION

### A.     Physicians' Opinions

Regardless of the source, the Commissioner will evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c).  In evaluating medical opinions, generally more weight is given to the opinions of an examining source than a non-examining one.  Id.  Additionally, more weight is generally given to opinions of treating sources than non-treating sources, such as consultative examiners.  Id.

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  However, "the rule does not require that the testimony be given controlling weight."  Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*).  Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."  Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  Any other factors that may support or contradict the opinion should also be considered.[3]  20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).  In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  Further, " 'if a physician's opinion is not

---

[3] The Social Security regulations provide that *all medical opinions*, which include opinions of examining or consultative doctors, will be evaluated considering these same factors.  20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e).



supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

   1.   **Dr. Bishop (Treating Physician)**

Bond first argues that the ALJ erred in giving little weight to the opinion of Bond's treating physician, Dr. Kellie Bishop. Bond points to Dr. Bishop's opinions in October 2010 that Bond was very impaired and completely disabled and could in no way function at a job. Dr. Bishop also completed a medical source statement dated March 1, 2011 opining that Bond had a poor ability to follow work rules, relate to co-workers, use judgment, deal with work stresses, function independently, and maintain attention and concentration. Dr. Bishop noted that Bond was very limited in functioning and needed neurological testing and treatment to determine the underlying causes. Dr. Bishop further observed that Bond had a poor ability to understand, remember, and execute complex or detailed job instructions, and that Bond's perceptions did not coincide with reality. Dr. Bishop opined that Bond could not complete work-related tasks for eight hours a day, five days a week, in a sustained and continuous manner. In a letter dated May 24, 2011, Dr. Bishop recorded that she had treated Bond since 2008 and "seriously doubt[ed] her ability to perform consistently in a work environment." (Tr. 474.)

The ALJ gave Dr. Bishop's opinion little weight because she found that Dr. Bishop's conclusions were not consistent with her treatment notes. This is an acceptable reason under applicable law.[4] See 20 C.F.R. §§ 404.1527(c), 416.927(c); Craig, 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own

---

[4] Further, opinions that a claimant is disabled or unable to work are reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d).



treatment notes). The ALJ gave two examples. Although Bond challenges each, she has not shown, for the reasons that follow, that the ALJ erred in rejecting Dr. Bishop's opinion or that her decision to do so is unsupported by substantial evidence.

First, the ALJ noted that Bond's GAF scores[5] as documented by Dr. Bishop belied the doctor's own conclusions. Bond's medical records included several GAF scores at various times. (Tr. 282-83, 291-92, 389-90, 393-96, 417-18, 435-36; see also Tr. 280-81, 284-90, 391-92, 397-98, 419-20.) Although GAF scores show a claimant's functioning at a snapshot in time, the ALJ noted that Dr. Bishop's own treatment notes documented "GAF scores *consistently* between the range of 55 and 60, indicating only moderate symptoms." (Tr. at 19) (emphasis added). The court agrees with the Commissioner that while GAF scores are not alone a permissible indicator of disability and in fact have been discontinued in the DSM-V, the ALJ is not *precluded* from considering them in determining whether a treating physician's opinion is consistent with her own treatment notes when evaluating the reliability of the physician's opinion regarding a claimant's level of functioning. See Craig, 76 F.3d at 590. While Bond argues that the ALJ exercised expertise she did not possess in using Bond's GAF scores to assess her level of functioning, the ALJ's opinion shows that she merely used the GAF scores to assess the consistency of Dr. Bishop's treatment notes with Dr. Bishop's opinion. This was within the ALJ's purview.

---

[5] The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fourth edition ("DSM-IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning. A GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation. Id. at 32-33; see also Parker v. Astrue, 664 F. Supp. 2d 544, 557 (D.S.C. 2009) (stating that "Plaintiff's GAF score is only a snapshot in time, and not indicative of Plaintiff's long term level of functioning"). However, the court observes that the fifth edition of the DSM, published in 2013, has discontinued use of the GAF. American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed. 2013) ("DSM-V").



The second example the ALJ gave where Dr. Bishop's treatment notes were inconsistent with her opinion is that the treatment notes showed that Bond's condition improved with medication. The ALJ observed that in January 2011 Dr. Bishop noted that Bond's condition was "good and better" and that Bond was doing some babysitting. Further, her focus and concentration had improved and Bond exhibited a good mood. In arguing against the ALJ's conclusion in this regard, Bond essentially relies on later-obtained evidence to show that any improvement was not sustained. (See Pl.'s Br. at 27, ECF No. 23 at 27.) Further, Bond argues that the Appeals Council, which considered and addressed this evidence, erred in failing to remand the case to the ALJ to consider it. However, the newly submitted evidence, an opinion from Dr. Richard C. Ford, did not pertain to Bond's condition during the relevant time period; the Appeals Council therefore properly declined to remand the case. See Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (*en banc*) (explaining that the law provides that evidence submitted to the Appeals Council with the request for review must be considered in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision") (internal quotation marks and citation omitted). Further, to the extent that Bond argues that the ALJ selectively considered signs of Bond's improvement without considering those notes in the context of the entire record, the court disagrees. (See generally Def.'s Br. at 9-10, ECF No. 25 at 9-10) (discussing Bond's treatment notes). As explained by the Commissioner, some of these notes show that Bond was not exhibiting mental health symptoms during many of her medical appointments; that when she did exhibit symptoms of depression they improved with medication; that her physician attributed Bond's complaints of cognitive difficulties to physical impairments; and that Bond's psychiatric condition was generally (although not always) normal. (Tr. at 280-91, 322, 334, 342,

351, 389-98, 417-21, 440, 449.)  In light of this, the court cannot agree that the ALJ selectively considered the record such that her opinion is unsupported by substantial evidence.

    **2.    Dr. Shaffer (Consultative Examiner)**

Next Bond argues that the ALJ erred in affording little weight to the opinion of Scott C. Shaffer, Ph.D., a consultative examiner, from May 2011.  Dr. Shaffer concluded that Bond had mild to moderate work-related restrictions in many areas, with marked restrictions in a few areas, including "respond[ing] appropriately to usual work conditions and to changes in a routine work setting." (Tr. 470.)  The ALJ rejected Dr. Shaffer's opinion because she found that his conclusions were wholly based on Bond's self-reported difficulties in the workplace, which the ALJ found were not substantiated by the psychiatric medical evidence in the record.  Although Bond argues that the ALJ's rationale is unreasonable because it "begs the question why the Social Security Administration is sending thousands of claimants for psychological testing, if the results can be properly rejected simply because the information comes from the claimant," this submission fails because that is not what the ALJ did.  Rather, the ALJ rejected the opinion because the treatment notes from Bond's physician did not indicate that Bond's reports of workplace strife relayed to Dr. Shaffer were attributable to a psychiatric cause.[6]  While Bond may believe that the ALJ should have concluded otherwise, she cannot show that the ALJ's conclusion in this regard is not supported by substantial evidence.  (See, e.g., Tr. 435) (treatment note of Dr. Bishop relaying Bond's mother's statement that Bond lost her security job because "[Bond] could not perform up to standards," but not indicating that this was due to any psychiatric problems).

---

    [6] The court observes that Bond's testimony at the hearing before the ALJ also focused on physical issues causing her problems at work.

Page 10 of  14



**B.     Residual Functional Capacity**

Bond also appeals the ALJ's assessment of her residual functional capacity ("RFC"). A claimant's RFC "is the most [a claimant] can still do despite [her] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1645(a)(1), 416.945(a)(1). In assessing RFC, an ALJ should scrutinize "all of the relevant medical and other evidence." See 20 C.F.R. §§ 404.1645(a)(3), 416.945(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting her conclusions with respect to a claimant's RFC.

The ALJ incorporated various limitations with regard to Bond's ability to work:

> [T]he claimant has the residual functional capacity to sit for 6 hours in an 8-hour day for 2 hours at a time, and stand/walk 2-4 hours in an 8-hour day for one hour at a time. She is limited to simple, routine, repetitive tasks in a stable environment with infrequent, gradual changes. She must avoid interaction with the general public or co-workers and work in limited proximity with co-workers (they can be in the same room but must work independently). She should avoid unprotected heights, climbing ladders, ropes and scaffolds and dangerous moving machinery.

(Tr. 17.) Bond first argues that the ALJ erred in failing to follow properly the procedure for evaluating mental impairments required by 20 C.F.R. § 404.1520a in assessing Bond's residual functional capacity. However, as the Commissioner points out, this regulation, which essentially sets forth a "special technique" for evaluating mental impairments, applies at Steps Two and Three of the sequential evaluation process, not to the subsequent RFC analysis. Moreover, while Bond seems to challenge the sufficiency of the evidence cited by the ALJ in finding that Bond's functional limitations from her mental impairment were only moderate, the court observes that the ALJ extensively discussed the evidence she considered in determining that Bond's limitations in each functional area were no more than moderate. (See Tr. at 15-16.) The court concludes that the ALJ's finding in this regard are sufficiently supported, regardless of whether a different fact finder might



find them to be more severe. See Craig, 76 F.3d at 589 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" and stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Blalock, 483 F.2d at 775 (indicating that regardless of whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

Bond also argues that the ALJ failed to perform a function-by-function assessment regarding Bond's ability to lift and carry or addressing Bond's postural abilities such as stooping, kneeling, crouching, squatting, crawling, or climbing. However, she has not shown that she had any functional limitations supporting any restrictions in that regard. Although Bond argues that an analysis of other functional limitations was required in light of the ALJ's limiting Bond regarding her ability to stand for long periods, she fails to show that this limitation stemmed from a physical impairment that would necessitate an assessment of other functions. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). Moreover, to the extent the ALJ's discussion could be considered deficient, it is harmless error. See Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

## RECOMMENDATION

For the foregoing reasons, the court finds that Bond has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 16, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).